## City of Covington v. Patterson.

(Decided May 3, 1921).

### Appeal from Kenton Circuit Court (Criminal, Common Law and Equity Division).

1. Action—Accrual of Cause of Action.—The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued and the statute of limitations begins to run.

2. Municipal Corporations—Lien for Improvements—Accrual of Cause of Action.—Kentucky Statutes, section 3575, regulating the procedure in enforcing liens by a city of the second class apportioned to abutting lots, according to value, for the original construction of streets under the ten year bond plan, by providing that the cost thereof as assessed against such lots may be paid by the owners thereof in annual installments when taxes assessed by the city are payable; and that: "The assessment (for street construction) may be collected like other taxes or the city may, at any time after one installment remain delinquent for thirty days, by a suit in equity enforce its lien for all the unpaid installments, with interest thereon to the date of satisfaction of same and its costs expended," clearly confers upon the municipality the right to sue and enforce its lien for all unpaid installments of the assessment thirty days after the first or any one of them becomes delinquent. Its right of action accrues, therefore, upon the expiration of the thirty days and the statute of limitations then begins to run; and if suit be not brought within five years next after such right of action thus accrues, the statute will bar a recovery as to all the unpaid installments of the assessment.

D. COLLINS LEE and A. E. STRICKLETT for appellant.

GEORGE PATTERSON for appellee.

Opinion of the Court by Judge Settle—Affirming.

Prior to January 1st, 1908, Latonia, a city of the fourth class, under certain ordinances duly passed by its council, ordered and compelled, by original construction, the improvement of two of its streets known, respectively, as Tracey and Earle Avenues, the streets being of macadam construction and the pavements, curbing and gutters constructed of cement. The improvements were made at the cost of the owners of the real estate abutting the streets under the ten year bond plan as provided by section 3575, Kentucky Statutes, such cost being assessed, as claimed, proportionately against the abutting lots according to value.

Among other real estate assessed with the cost of the improvements in question were lots 203 and 204, both then owned by J. T. Earle, the first fronting on Tracey avenue, the second (a corner lot), adjoining the first and also fronting on Tracey avenue, but running back its entire depth with and upon Earle avenue. The assessment against these lots was fixed at $74.45 for the construction of Tracey avenue and $332.30 for the construction of Earle avenue. After the assessments were made J. T. Earle sold and conveyed the two lots to J. F. Martin, who sold and conveyed them to McCracken, by whom they were sold and conveyed to R. A. Patterson. Thereafter Patterson died leaving a will by which the lots were devised to his widow, Nannie Patterson, the present owner.

Under proper proceedings instituted by the city of Covington, to which the city of Latonia was made a party, the latter city was annexed to and made a part of the city of Covington, which thereby assumed the corporate liabilities and succeeded to the corporate assets and rights of the city of Latonia. This annexation was effected while the two lots in question were owned by J. T. Earle and after their assessment proportionately for the cost of improving Tracey and Earle avenues, respectively. After their conveyance by Earle to J. F. Martin, the latter conceiving that the assessments against the lots which remained as liens thereon were excessive, brought suit in the Kenton circuit court against the city of Covington, as allowed by section 2478, Kentucky Statutes, seeking a reduction thereof. The court by its judgment rendered in the action March 5, 1909, denied a reduction on the Tracey avenue assessment, leaving it at $74.45, but

reduced that for Earle avenue from $332.30 to $50.55, providing that the assessments might be paid, with interest from January 28, 1908, in ten annual installments or in cash.

No part of the amounts assessed against the lots for the improvement of Tracey or Earle avenues was ever paid; and although the improvements were completed and the assessments made prior to January 1, 1908, the appellant, city of Covington, did not sue to recover them or to enforce the liens on the lots given by statute to secure their payment until December 27, 1915. Two actions were then brought by it, both against R. A. Patterson, the then owner of the lots, the recovery sought being such installments of the assessments on each lot as were then alleged to be due. The actions were consolidated, but R. A. Patterson soon thereafter died and no further steps were taken therein until March 29, 1919, at which time the appellant filed an amended petition setting up the death of R. A. Patterson, the ownership of the lots by the appellee, Nannie Patterson, as devisee under his will, and making her a party defendant to the consolidated actions. By this amendment the alleged right of appellant to recover and enforce a statutory lien for the entire ten installments of the assessments on the lots unpaid was pleaded and judgment prayed therefor.

The appellee filed an answer to the petitions in the consolidated actions as amended, pleading in bar of the recovery sought therein the limitation of five years declared by Kentucky Statutes, section 2515, which provides:

"An action upon . . . a liability created by statute, when no other time is fixed by the statute creating the liability . . . shall be commenced within five years next after the cause of action accrued."

Appellant filed a general demurrer to the answer, which the court overruled. It then filed a reply containing a traverse of the plea of limitations made in the answer and a plea of estoppel arising, as alleged, out of the act of appellee's remote vendor, Martin, in suing for and procuring a reduction in part of the assessment on the lots or one of them. A demurrer to the reply was sustained and the appellant's consolidated actions dismissed. From the judgment manifesting these several rulings the latter has appealed.

If the plea of the statute of limitations can be relied on by appellee in this case it is patent that the five year period provided by the section, *supra,* is applicable. So the question first to be determined is, when did the appellant's cause of action accrue? Obviously it arose or accrued when it had the right to sue to enforce the payment of its claims now attempted to be recovered. City of Louisville v. Johnson, 95 Ky. 254; City of Lexington v. Crowthwaite, 25 R. 1898. As well said in 25 Cyc., 1065, 1066: "The statute of limitations begins to run from the time that a complete cause of action accrues, that is, when the suit may be maintained, and not until then. . . . The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued and the statute begins to run. So, whether at law or in equity, a cause of action arises when and only when the aggrieved party has a right to apply to the proper tribunals for relief. . . . A true test, therefore, to determine when a cause of action accrues is to ascertain the time and place when the person could have first maintained an action to a successful result."

Kentucky Statutes, section 3575, regulates the procedure in the matter of enforcing liens created for the benefit of the city for the payment of assessments made against real property for street construction under the ten year bond plan, and fixes the time of its bringing suit for that purpose. Its language is as follows:

"The first installment, together with interest on the whole amount at the rate specified, shall be payable at the first payment of taxes next succeeding the time the assessment is placed upon the tax list, the interest to be computed to the date the taxes are due and payable, and the other installments annually thereafter, always at the time of the other city taxes with interest on the installments, not due at the time, until all the installments are paid. *The assessment may be collected like other taxes or the city may, at any time after one installment remains delinquent for thirty days, by a suit in equity enforce its lien for all the unpaid installments, with interest thereon to the date of satisfaction of same, and its costs expended."*

The evident object of the legislature in providing for the collection by suit of all unpaid installments, after a delinquency of thirty days as to any one of them, was to

prevent the necessity of the city's suing separately upon each of them as due, and thereby causing excessive costs to the property owner. The statute gives the city two remedies: First, to collect the assessment like other taxes; second, to collect by a suit in equity. We are not inclined to agree with counsel for appellant that the use of the word "may" in the statute merely gives to the city an option under which it may elect to wait until a part or all the installments are due and sue upon either a part or all. As well argued by opposing counsel, a contract entered into voluntarily between parties containing the word "may" in a similar connection might be given such a construction; but it is not to be overlooked that the right of action in this case is based on a compulsory contract. The appellee is without choice; the city makes the improvement at its own election and the property owner is compelled to pay for it as declared by the terms of the statute under which the city acts.

We think the word "may" as used in section 3575 as much gave the appellant the right and made it its duty to sue for all installments of the assessment thirty days after the first became delinquent as if the word "shall" had been used. Therefore the delinquency had the effect to accelerate the maturity of all unpaid installments. If the city sues it must sue for all installments unpaid. It will not be permitted to split the various installments into several causes of action. The right of action accrues when any installment of the assessment is delinquent thirty days, the statute of limitations then begins to run and if the suit is delayed as in this case as much as five years after the delinquency of thirty days as to the first or any installment of the assessment, the statute will operate as a·bar. Ryan v. Caldwell, 106 Ky. 543; Snyder v. Miller, 71 Kan. 410; Dodge v. Signor, 18 Texas Civ. App. 45; San Antonio Ass. v. Stewart, 94 Texas, 441; Wheeler & Wilson Mfg. Co. v. Howard, 28 Fed. Cts. 741; Hunt v. Roberts, 45 N. Y. 691.

In Ryan v. Caldwell, *supra,* a promissory note due in five years contained this provision as to the interest: "Should as much as two installments of interest, at any time, be due and unpaid, then and in that event the whole is to become due and unpaid."

Suit was not brought on the note until more than seven years after default in the payment of two installments of interest. The surety relied on the limitation of seven

years as a bar to a recovery against him. In sustaining the plea we said: "Giving to it its plain meaning, the payee's cause of action against the surety accrued upon the default of payment of interest as stipulated, and seven years after the cause of action accrued the statutory bar of limitation was complete. We think this view of the contract accords with reason and is supported by weight of authority."

The case of Boyd v. Buckhannon, 176 Mo. 56, seems more directly in point. The note sued on contained this stipulation: "It is agreed that if this note is not paid at maturity it shall then draw interest at 8 per cent. per annum, and that on failure to pay any installment of interest when due the holder hereof may collect the principal and interest at once." In sustaining the obligor's plea of the statute of limitations the court said:

"The cause of action accrues when the right exists to institute a suit for its enforcement. . . . In this case the holder undoubtedly had the right to bring his action on the note when the default was made. But since the phraseology of the note in controversy is 'that on failure to pay any installment of interest when due, the holder *may* collect the principal and interest at once,' it is suggested that it gave the holder an option to claim the whole note, which he need not exercise, and which refusal to exercise it would not redound to payor's benefit in the way of a claim to the protection of the statute of limitation. The law is otherwise. In Hemp v. Garland, 4 Q. B. 519, the contract was that plaintiff, in case of default in any installment, 'should be at liberty to enter up judgment and issue execution' for the whole debt. The court said: 'The plaintiff was not obliged to give further time in case of default, but might if he pleased on non-payment of any installment, proceed to recover all that remained due on the principal sum.' And that 'the statute of limitations runs from the time plaintiff might have brought his action, and as the plaintiff might have brought his action upon the first default and did not choose to enter up judgment, we think that the defendant is entitled to a verdict upon the plea of statutory limitations.' "

There is no law requiring a creditor to sue upon an obligation. He may do so or suffer the penalty imposed by the statute of limitations for his failure to sue in the

time it requires the action to be brought. So had the word "shall" instead of "may" been used in the section, *supra,* there would have been no way by which appellee could have compelled the appellant to bring suit sooner than was done. The remedy was wholly in the latter's hands and it alone must bear the loss resulting.from the delay in suing.

We regard the opinion in Boyd v. Buckhannon, *supra,* conclusive of the case at bar, and therefore endorse the soundness of its reasoning and conclusions. We have not been referred to any case in this jurisdiction or elsewhere construing the provisions of the statute, *supra,* or a similar one in respect to the question involved in the case at bar; and none of the many cases in this and other states cited by counsel for appellant rests upon a similar statute or state of facts. Appellant's plea of estoppel cannot be sustained. Appellant was not misled, deceived or prevented by the action of appellee's vendor to obtain a reduction of the assessment upon the lots from enforcing collection of the assessments. Moreover, the appellant delayed the bringing of its action more than five years after the judgment reducing the assessment was obtained.

"In order that the conduct of one shall constitute an estoppel against him as to any of his rights in favor of another, that conduct must deceive to his hurt him who pleads it." Kraut v. City of Dayton, 30 R. 191; South v. Dayton, 113 Ky. 312.

For the reasons indicated the judgment is affirmed.